IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| America First Legal Foundation and Richard Grenell,<br><br>*Plaintiffs,*<br><br>v.<br><br>Alejandro Mayorkas, United States Department of Homeland Security, and Homeland Intelligence Experts Group,<br><br>*Defendants.* | Civil Action No. 1:23-cv-3322 |

**PLAINTIFFS' MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD
AND FOR EXTRA-RECORD DISCOVERY**

Gene P. Hamilton
D.C. Bar No. 1619548
Reed D. Rubinstein
Andrew Block
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Christopher E. Mills
D.C. Bar No. 1021558
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

## TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

Background ............................................................................................................................ 1

Legal Standard ....................................................................................................................... 4

Argument ................................................................................................................................ 5

    I.    Supplementing the administrative record is necessary. .................................. 6

    II.   Extra-record discovery is also necessary. ........................................................ 12

Conclusion ............................................................................................................................ 16

## INTRODUCTION

Plaintiffs move to supplement the barebones administrative record filed by the Department of Homeland Security and further move for extra-record discovery. Even the government appears to recognize the insufficiency of its record, as it files an updated version of an out-of-record declaration by a low-level agency employee "to provide further details about the purpose, formation, and operations of the Experts Group." ECF No. 16-3 ¶ 3. The evident reason that the government resubmitted this declaration by someone with no apparent decisionmaking power over the Homeland Intelligence Experts Group is that the government cannot support its arguments based on the deficient administrative record offered. Practically nothing in that record was before the agency when it decided to establish the Group. And practically nothing in that record clarifies the Group's function since it started meeting. Thus, Plaintiffs move to supplement the administrative record and for further discovery to enable the Court to properly adjudicate this case.

## BACKGROUND

The Court is familiar with the background of this case, which was filed against DHS and the Experts Group alleging violations of the Federal Advisory Committee Act ("FACA"). *See* ECF No. 4-1, at 3–9. After a hearing, the Court denied the Plaintiffs' motion for a preliminary injunction. ECF No. 14. Though agreeing with the Plaintiffs on most of FACA's prerequisites, the Court found that, "on this record" and at the preliminary injunction stage, the Plaintiffs had not "carried their burden to

show that the group was formed to and does render group advice in the way that the circuit has defined it." *Id.* at 26:17–20.

The Court emphasized that going forward, it would "have to answer the question as to whether the group provides group advice or advice as a group based on the [administrative record]." *Id.* at 27:1–3. The Court said that the administrative record "would certainly include descriptions of the group's purpose, like the press release, and probably declarations from the agency explaining why the group was formed and what it is intended to do," and "[i]t may include more than that." *Id.* at 27:6–10.

At the hearing, the government warned the Court that it would likely be unable to rely solely on the administrative record. The government agreed with the Court that "evidence regarding [the Group's] actual functioning to date" should "appropriately be in the AR." *Id.* at 20:11–15. But the government also said that "[w]e don't know that there would be a lot of nondeli[berative] material that would go into an AR," so "something more in terms of a declaration from the agency would be required to talk about how the group functions on summary judgment." *Id.* at 20:4–10. Thus, the government "anticipate[d] submitting declarations" because it did not think the Court would "be able to discern from an administrative record that FACA doesn't apply." *Id.* at 20:21–25.

Sure enough, though the government did not file any motion to supplement the administrative record, the government's submission includes a long, out-of-record declaration from Tamara Hutchinson, who "administer[s] the Homeland Intelligence

2

Experts Group." ECF No. 16-3 ¶ 2. Hutchinson does not claim any involvement with the concept for the Group, its establishment, or selection of specific members. Yet Hutchinson makes many assertions about the Group, including that it "operate[s] differently from other advisory bodies within the Department, including one that I also administer." *Id.* ¶ 14. Hutchinson does not specifically identify any other advisory body.

As for the actual administrative record, it is more barebones than the government forecasted. It does not even include the press release announcing the Group, as this Court reasonably assumed it would. *See* ECF No. 14 at 27:6–10. Over half of the record consists of form introduction letters sent to all Group members after the Group was established but before its first substantive meeting. AR 14–49 (ECF No. 17-1). The only other documents are:

> (1) a memorandum seeking "approval" of a draft Group charter and plan—listing FACA as an "[a]uthorit[y]" (AR 1, 13)—but without further detail or correspondence, including about Hutchinson's statement that the drafts were not adopted (ECF No. 16-3 ¶ 5) or about the certifying declarant's statement that the drafts "post-date[] the decision to form the [Group]" (ECF No. 16-1, at 1);
>
> (2) an uncompleted Biological Sciences Expert Group Concept Paper with no apparent or explained relevance to this Group (AR 50; *see* AR 54 (blanks)); and,
>
> (3) a Homeland Security Intelligence Council Charter dated September 2015 about a group comprised of government officials,[1] again with no apparent or explained relevance to this Group (AR 57; *see* AR 63).

---

[1] By its terms, FACA does not cover groups "composed wholly of full-time government officials." *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 912 (D.C. Cir. 1993) ("*AAPS*").

3

That's it. Hutchinson's only appearance in the administrative record is as a contact for Group members who need "administrative information." *E.g.*, AR 15.

At the preliminary injunction hearing, the Court explained that "[i]f plaintiffs feel that the administrative record is insufficient to enable sufficient judicial review, you are free to move to supplement that record." ECF No. 14, at 29:4–6. Because the Plaintiffs agree with the government that the current administrative record is insufficient to enable adjudication of this case, the Plaintiffs file this motion.[2]

## LEGAL STANDARD

"[J]udicial review of agency action under the APA is generally limited to the administrative record." *America First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 187 (D.D.C. 2022) (cleaned up). "The administrative record consists of all documents and materials that the agency directly or indirectly considered, no more and no less." *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 77 (D.D.C. 2018) (Cooper, J.) (cleaned up). "[F]or a plaintiff to prevail on a motion to complete the record—that is, to add evidence that is properly part of the record but was excluded—[it] must only put forth concrete evidence and identity reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record." *Id.* at 78–79.

In APA cases, extra-record discovery of "evidence that was not initially before the agency" is appropriate if the plaintiff "can demonstrate unusual circumstances

---

[2] Counsel for the Plaintiffs conferred on this motion with counsel for the government, who represented that the Defendants would consider this motion once filed but would likely oppose at least the extra-record discovery request.

justifying a departure from the general rule against considering extra-record evidence." *Id.* at 77 (cleaned up). "One such circumstance is 'where the administrative record itself is so deficient as to preclude effective review.'" *America First Legal*, 630 F. Supp. 3d at 187 (quoting *Hill Dermaceuticals, Inc. v. FDA.*, 709 F.3d 44, 47 (D.C. Cir. 2013)); *see Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 233 F. Supp. 2d 16, 30 (D.D.C. 2002) (same, another FACA case); *accord Oceana*, 290 F. Supp. 3d at 78.

Since FACA cases like this "involve[] not only an APA claim but also claims against a non-agency group under the Mandamus Act," the general rule limiting APA cases to the administrative record "does not completely bar discovery outside the Administrative Record" in the first place. *America First Legal*, 630 F. Supp. 3d at 187. "Courts routinely allow FACA cases involving non-APA claims to proceed to discovery." *Id.*

## ARGUMENT

Two routes are appropriate to obtain sufficient information to adjudicate this case. The first is supplementation of the administrative record. Given the government's (unapproved) supplementation of the record already with the Hutchinson Declaration, it can hardly dispute that the flimsy administrative record is insufficient. And that post-hoc declaration from a low-level employee who was not a decisionmaker about the Group is not nearly sufficient to make up for the inadequate administrative record.

The second route is discovery outside the administrative record, which would be appropriate regardless because the Plaintiffs' claims are not solely based on the

APA. Technically, this would not be "supplementing" the administrative record but conducting extra-record discovery. The Plaintiffs include this route here to streamline the Court's consideration of how the parties can gather sufficient evidence to enable adjudication of the claims. For the same reasons that supplementation is necessary, extra-record discovery is also warranted to obtain relevant information about the Group's establishment and function.

## I.     Supplementing the administrative record is necessary.

Whether one considers the Experts Group's establishment or how DHS has used it, the existing administrative record is deficient. The government seems to recognize that fact, submitting an out-of-record declaration. But that declaration does not explain materials inside the administrative record, is not provided by a competent decisionmaker, and is not a substitute for a proper administrative record. Thus, the administrative record requires supplementation for the Court to adequately consider the claims here.

In determining whether a group falls within FACA, the statute focuses on whether the committee was "established" "in the interest of obtaining advice" from the group. 5 U.S.C. app. 2 § 3(2). Thus, courts have said that what matters under FACA is "the Committee's creation" rather than "how the Committee was used." *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1018 n.1 (D.C. Cir. 1998); *see Sofamor Danek Grp., Inc. v. Gaus*, 61 F.3d 929, 934 (D.C. Cir. 1995) (emphasizing that the statute focuses on "the purpose for establishing a committee"); *Animal Legal Def. Fund, Inc. v. Shalala*, 104 F.3d 424, 428 (D.C. Cir. 1997) (FACA's definition "focuses not so much on *how* [the group] is used but" on "the character of its creating institution").

6

Courts have also considered, however, how the group actually functions. *See, e.g.*, *VoteVets Action Fund v. United States Dep't of Veterans Affs.*, 992 F.3d 1097, 1104–05 (D.C. Cir. 2021). This Court emphasized this point at the preliminary injunction hearing, and the government agreed. *E.g.*, ECF No. 14, at 16:6–8 (government's counsel agreeing that "I think you do have to look at how the [Group] actually functions").

On both aspects—establishment and function—the existing administrative record is deficient. As to the Group's establishment, the administrative record says practically nothing at all. The AR is supposed to be comprised of all documents that were "before the agency at the time it made its decision" to establish the Group. *Safari Club Int'l v. Jewell*, 111 F. Supp. 3d 1, 3 (D.D.C. 2015). But the entire record, other than two irrelevant documents about unrelated groups, seems to post-date the decision to form the Group. The government's certifying declarant says that the memorandum and unadopted Group charter and plan "post-date[] the decision to form the [Group]." ECF No. 16-1, at 1. And the introductory letters that make up the bulk of the AR are dated long after both this decision *and* even after the Group's introductory meeting. *E.g.*, AR 22 (letter dated June 9, 2023); *see* ECF No. 16-3 ¶ 10 (noting introductory "plenary" meeting on May 23, 2023). So nothing of relevance in the administrative record was "before the agency at the time it made its decision." *Safari Club*, 111 F. Supp. 3d at 3. The notion that the *only* two documents considered by DHS before it established the Group were a "Biological Sciences Experts Group Concept Paper" and an unrelated eight-year-old council charter is difficult to credit.

7

Apparently recognizing the AR's shortcomings, the government submits a modified, out-of-record Hutchinson Declaration, which resembles the one filed at the preliminary injunction stage but with a few more factual claims intended to help the government's FACA defense. The submission of this declaration confirms that the government itself finds its administrative record to be inadequate—though the government did not move to supplement the record—supporting the Plaintiffs' view that supplementation of the administrative record is necessary.

The Hutchinson Declaration itself is no substitute for an adequate administrative record. First, the relevant assertions in that declaration find no support in the administrative record. "An agency must defend its actions based on the reasons it gave when it acted," not force "litigants and courts to chase a moving target." *DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020); *see SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). "[C]ourts base their review of an agency's action[]" by looking to "the time its decision was made." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). A corollary of these rules is that agencies generally may not "attempt to submit litigation affidavit[s] to provide post hoc rationalization of the agency's action." *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 215 (D.D.C. 2012) (citing *AT&T Info. Sys., Inc. v. GSA*, 810 F.2d 1233, 1236 (D.C. Cir. 1987)). Any "new material should be merely explanatory of the original record and should contain no new rationalizations." *AT&T*, 810 F.2d at 1236 (cleaned up).

Here, the administrative record contains practically "no rationalization" for its decisions about the Group or how to operate it. DHS "is therefore precluded from

8

initially offering one on judicial review." *Id.* And "it is hard to see what evidence in the Administrative Record the [Hutchinson] Declaration 'merely explains.'" *America First Legal*, 630 F. Supp. 3d at 186. That declaration does not even refer to the administrative record, much less purport to explain anything in it.

Second, "the rule against post-hoc rationalizations forbids judges to uphold agency action on the basis of rationales offered by anyone other than the proper decisionmakers." *Delta Air Lines, Inc. v. Exp.-Imp. Bank of U.S.*, 85 F. Supp. 3d 436, 449 (D.D.C. 2015) (cleaned up). Here, the government provides no evidence that Hutchinson decided to establish or maintain the Group. She says that she simply "admister[s]" it, and the administrative record's form letters told members to contact her only for "administrative information." ECF No. 16-3 ¶ 2; *e.g.*, AR 23. So she is not a "proper decisionmaker."

The administrative record also sheds little light on the other inquiry emphasized by this Court at the preliminary injunction hearing: how the agency uses the Group. *See* ECF No. 14, at 20:11–13 (suggesting that "evidence regarding [the Group's] actual functioning to date" "would appropriately be in the AR") Again, the government says that the Group charter and plan in the administrative record were not adopted, and the introductory form letters came before the Group's substantive meetings.

If anything, the AR raises more questions than it answers. Why draft a charter/plan just like the one FACA requires (5 U.S.C. app. 2 § 9(c)) that *lists FACA as an authority* (AR 13), then not adopt it? If the charter/plan was not approved, how

9

did the Group come into existence? Once again, all we have is the out-of-record Hutchinson Declaration, but that declaration provides no answers to these and other critical questions. And the government's need to rely on that declaration only underscores that the record is deficient, and it still provides no evidence that Hutchinson is a proper decisionmaker in terms of how to use the Group on an ongoing basis.

All this brings us to the remaining question: how should the administrative record be supplemented? Putting aside the obvious (and perplexing) omissions—the official press release about the Group, for example—the government should supplement the record to include (as is the basic requirement for every record) all relevant material that was before DHS when it decided to establish the Group. Without access to these documents, the Plaintiffs cannot describe them precisely, but it defies belief that DHS considered *nothing* other than two unrelated group charters when it established the Group and as it has operated it.

The government's certifying declaration invokes undefined "other privileges" as reasons unidentified materials "are not part of the Administrative Record." ECF No. 16-1, at 1. But most privileges, like the deliberative process privilege, are "qualified privilege[s] and can be overcome by a sufficient showing of need," which is determined "flexibly on a case-by-case, ad hoc basis." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). Here, given the concededly deficient administrative record (and deficient substitute declaration), documents assertedly covered by qualified privileges should be produced and included in the record notwithstanding these

privileges. At a minimum, the government should provide enough information about the documents and claimed privileges to enable the Plaintiffs and the Court to consider these issues. "[T]he agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process," and "the deliberative process privilege" is "dependent upon the individual document." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867–68 (D.C. Cir. 1980); *cf. Oceana*, 290 F. Supp. 3d at 83 ("The Service prepared a log listing the documents it withheld from the administrative record on the basis of privilege.").[3]

The administrative record should also include documents referenced in the present administrative record. Some consideration must have preceded the memorandum sending the (unadopted) Group charter and plan. AR 1. Further, the form letters refer to "a slate of big-picture topics," which does not appear in the administrative record. *E.g.*, AR 14. The form letter also refers to "a binder of read-ahead materials that provide useful background"—also not in the administrative record. *E.g.*, AR 14–15. The form letter refers to "a contract" being finalized with MITRE (a non-profit corporation) "to support this effort," which is absent from the administrative record too. *E.g.*, AR 15. And the Hutchinson Declaration refers to

---

[3] Though courts have hesitated before requiring privilege logs connected to administrative records, *e.g.*, *Stand Up for California! v. United States Dep't of Interior*, 315 F. Supp. 3d 289, 298 (D.D.C. 2018), as shown below, the Plaintiffs are also entitled to extra-record discovery and a privilege log connected to that discovery would likely be required anyway. The paucity of materials in the record is another reason to require a log.

emails with Group members containing "[t]he agenda with meeting topic(s) for each meeting"; those too are absent from the record, though the government has included similar correspondence in the administrative record in other FACA cases. *See Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 52 (D.D.C. 2022) (noting emails with agendas and meeting minutes in the administrative record).

Because the existing administrative record is deficient, the Court should order the agency to supplement it with the materials outlined above, including all materials considered in establishing and operating the Group.

## II.   Extra-record discovery is also necessary.

For similar reasons, extra-record discovery is also warranted. Technically, this is different from "[s]upplementing the administrative record in an APA case." *Safari Club*, 111 F. Supp. 3d at 4; *see generally Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 13–15 (D.D.C. 2015); *Oceana*, 290 F. Supp. 3d at 77. But because it is independently warranted as the existing record is insufficient to adjudicate the case, the two issues are related and the Plaintiffs address extra-record discovery to streamline this Court's consideration.

While APA claims are generally limited to an administrative record, six of seven counts in the complaint (ECF No. 1) are *not* APA claims. *See America First Legal*, 630 F. Supp. 3d at 188 ("[T]his is not a case in which review of *all* claims is based solely on the Administrative Record."). One defendant, the Group, is not even an agency. And FACA inquiries like whether a committee is "fairly balanced" (5 U.S.C. app. 2 § 5(b)(2)) could rarely, if ever, be resolved solely by reference to the administrative record. Courts in similar cases routinely rely on documents outside

the administrative record. *E.g.*, *NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, No. 20-1132, ECF No. 25-1 (D.D.C. May 28, 2020); *id.*, 496 F. Supp. 3d 116, 126 & n.2 (D.D.C. 2020) (documents outside the record); *cf. Cherokee Nation v. Dep't of Interior*, No. 1:19-cv-02154 (TNM), 2021 WL 3931870, at *2 (D.D.C. Sept. 2, 2021) (review of "non-APA claims" against agency not limited to administrative record); *Nat'l Cap. Presbytery v. Mayorkas*, 567 F. Supp. 3d 230, 247 (D.D.C. 2021) (same).

Accordingly, courts commonly require discovery against the government in FACA cases raising similar issues. *See, e.g.*, *AAPS*, 997 F.2d at 915–16 (remanding for discovery "to determine the character of the working group and its members" because the record was "insufficient"); *VoteVets*, 992 F.3d at 1107 (remanding for discovery to reveal "whether the group was structured as an advisory committee within the meaning of FACA"); *Jud. Watch*, 233 F. Supp. 2d at 30–31; *Nat. Res. Def. Council v. Curtis*, 189 F.R.D. 4, 10 (D.D.C. 1999) (magistrate judge's memorandum opinion) (generally permitting discovery and noting that "[p]laintiffs can first premise discovery on their need to establish FACA violations for the existence of such violations is the heart of this lawsuit" and that "[f]actual information bearing on asserted violations of FACA . . . falls within the broad discovery permitted of information which is reasonably likely to yield relevant information"); *Nat'l Anti-Hunger Coal. v. Executive Comm. of President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529–30 (D.D.C. 1983) (plaintiffs had the opportunity for discovery).

So even if the administrative record here were complete, the Plaintiffs would be entitled to relevant discovery. Given that this administrative record is anything

13

*but* complete—and especially if the government says that it cannot meaningfully supplement that record—the Plaintiffs' entitlement to discovery is all the clearer. *See City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (extra-record discovery appropriate when "the agency failed to explain administrative action so as to frustrate judicial review" (cleaned up)); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (extra-record discovery appropriate "when the record is so bare that it prevents effective judicial review" (cleaned up)).

First, as explained, the government's administrative record is deficient, so whatever presumption of regularity administrative records normally enjoy, this one does not qualify. If the government contests that point, extra-record discovery would be warranted "to determine whether [the] administrative record is deficient." *Theodore Roosevelt*, 616 F.3d at 514.

Second, the government itself has opened the door to exploration of extra-record materials with its submission of the out-of-record Hutchinson Declaration. Parties are not generally forced to take the word of a declarant; instead, "a party is entitled to depose a witness on all relevant issues as to which the witness has knowledge." *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) (cleaned up). The D.C. Circuit has emphasized the need for such discovery about governmental affidavits submitted in connection with FACA cases. *See AAPS*, 997 F.2d at 911 n.11 ("[O]nce the Magaziner affidavit was filed and considered the district judge was obliged to permit reasonable discovery as to the facts set forth in the affidavit."). A deposition related to a declaration that would no doubt serve as the

14

foundation for the government's case—sure to be cited in its summary judgment motion far more than any document in this administrative record—is especially appropriate.

Even more relevant than Hutchinson's deposition would be depositions of the proper decisionmakers, including the Under Secretary for Intelligence and Analysis and the DHS Counterterrorism Coordinator, each of whom signed the letter to all Group members and were featured prominently in DHS's press release. *E.g.*, AR 15; *see* ECF No. 4-3, at 3. They are the main recipients of the Group's advice. *See* Brookings Institution, *DHS Under Secretary for Intelligence and Analysis Kenneth Wainstein: Current threat environment*, YouTube, https://youtu.be/RGtxAwVHz_c (Sept. 19, 2023) (beginning at 1:31.00) (explaining that the Group is giving advice to the Under Secretary for Intelligence and Analysis and the DHS Counterterrorism Coordinator). And the Under Secretary was evidently the impetus behind the Group, rendering his testimony (and perhaps that of his chief of staff, who certified the administrative record) particularly relevant. *See* AR 1; ECF No. 16-1, at 1. Other relevant discovery would include written requests that flesh out the agency's rationale for establishing the Group and how it has used the Group.

On that last point, extra-record discovery is also necessary to shed light on how the Group actually functions, since the government seems unable to provide that evidence in the administrative record (which normally focuses on materials before the agency when it acted, anyway). *See Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir.

15

1989) (noting that extra-record discovery may be warranted "in cases where evidence arising after the agency action shows whether the decision was correct or not").

Thus, extra-record discovery too is necessary to enable proper adjudication of the Plaintiffs' claims.

## CONCLUSION

For these reasons, the Court should order the Defendants to supplement the administrative record with all materials considered in establishing and operating the Group, and to provide specific justifications for withholding any materials. The Court should further "order the parties to meet and confer pursuant to Federal Rule of Civil Procedure 26(f) and propose a joint plan" for discovery, including on the issue "of whether the [Group] will function as a group or a collection of individuals." *America First Legal*, 630 F. Supp. 3d at 187–88.

Respectfully submitted,

*/s/ Gene P. Hamilton*
Gene P. Hamilton
D.C. Bar No. 1619548
Reed D. Rubinstein
Andrew Block
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

*/s/ Christopher E. Mills*
Christopher E. Mills
D.C. Bar No. 1021558
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

FEBRUARY 16, 2024